UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 6: 05-010-DCR-1 |
| V. | ) ) | |
| LARRY EDWARD CAREY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Larry Carey has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Record No. 165] In support, Carey contends that his health conditions and age make him especially vulnerable to the risks of COVID-19. [*Id.*] The United States opposes Carey's motion, arguing that he has not presented extraordinary and compelling reasons justifying release. Further, the government argues that the factors outlined in 18 U.S.C. § 3553(a) weigh against granting the relief requested. [Record No. 169]

After reviewing all relevant materials, the Court agrees with the government. Carey's motion will be denied for the reasons that follow.

I.

Carey pleaded guilty on July 20, 2005, to three counts of conspiracy to distribute various controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846 and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). [Record No. 51] He was sentenced to a 160-month term of incarceration, followed by a five-year term of supervised release. [Record No. 91] Carey has violated the

terms of his supervision on three separate occasions since his initial release. [Record Nos. 125, 141, 151] Following the most recent violations, he was sentenced on October 21, 2019, to 54 months incarceration, to be followed by a four-year term of supervised release. [Record No. 151]

Carey is currently incarcerated at FCI Yazoo City Low. The Bureau of Prisons ("BOP") projects that he will be released from his present term of incarceration on October 14, 2023. *See Find an Inmate*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 11, 2022).

## II.

A court may grant a compassionate release motion under § 3582(c)(1)(A)(i) after engaging in the following three-step inquiry: (1) "the court must find that extraordinary and compelling reasons warrant [a sentence] reduction"; (2) the court must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the court must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (internal quotation marks omitted) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). "Congress provided no statutory definition of 'extraordinary and compelling reasons,' instead delegating that task to the [United States] Sentencing Commission." *Id.* (citing 28 U.S.C. § 994(t)).

The United States Sentencing Commission subsequently issued U.S.S.G. § 1B1.13, a policy statement with Application Notes that prescribe categories of "extraordinary and compelling reasons" for a sentence reduction. *See id.*; U.S.S.G. § 1B1.13 n.1. According to the Sixth Circuit, this is "not an applicable policy statement for compassionate-release motions

- 2 -

brought directly by inmates, and so district courts need not consider it when ruling on those motions."[1] *Elias*, 984 F.3d at 519. As a consequence, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citations omitted).

There are, however, legal standards that govern that discretion. *See United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). Courts look to the ordinary meaning of the terms at the time Congress enacted the statute. *Id.* Thus, "extraordinary" means "most unusual," "far from common," and "having little or no precedent." *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). And "compelling" means "forcing, impelling, driving." *Id.* (Webster's Third New International Dictionary: Unabridged at 463).

### III.

Carey argues that extraordinary and compelling reasons to request relief exist due to his age and manageable health conditions—including "stiffness, muscle cramps, extreme fatigue, hypertension, cholesterol problems, pre-diabetic's [sic], [and] shortness of breath"[2]—

---

[1] However, a court *may* consider the policy statement as part of its discretionary inquiry into whether extraordinary and compelling reasons exist. *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021). The policy statement may be instructive when a defendant alleges extraordinary and compelling reasons that relate to its provisions. *See, e.g.*, *United States v. Gibson*, No. 5: 14-074-DCR, 2021 WL 4768244, at *2 (E.D. Ky. Oct. 12, 2021).

[2] The United States adds to this list of health problems "hyperlipidemia . . . osteoarthrosis, cervical disc disorder, [and an] unspecified bone disorder." [Record No. 169, p. 3 (citing Carey's BOP medical records).] And although it does not appear that Carey asserts these maladies as an independent basis for relief separate from his COVID-19 claims, they would not be sufficient even if he were to do so.

To the extent that his conditions were known at the time of imposition of the most recent term of incarceration, they cannot constitute extraordinary and compelling reasons justifying relief. *See Hunter*, 12 F.4th at 570 ("[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence."). And insofar as they were not documented at the time of sentencing, these minor issues are neither terminal nor do they "substantially diminish [Carey's] ability . . . to provide self-care within

put him at increased risk of severe illness or death from COVID-19.[3] [Record No. 165, p. 1] He also contends that he has "spent his time in a positive way and completed several classes" and that he "can't possibly benefit from further incarceration." [*Id.*, p. 1–2] The United States responds that neither of these arguments amounts to an extraordinary and compelling reason justifying release.

Turning to Carey's COVID-based arguments, the Sixth Circuit has made clear that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This is true even where a defendant may have serious conditions that make him susceptible to contracting a severe case of COVID-19. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021). "After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Lemons*, 15 F.4th at 751. And while prison conditions may present "unique challenges" to COVID-19 mitigation, available vaccines still significantly reduce

---

the environment of a correctional facility." U.S.S.G. § 1B1.13 n.1(A). Accordingly, they do not constitute an independent ground for relief. *Cf. id.* (discussing medical conditions that *do* constitute extraordinary and compelling reasons justifying relief, including terminal cancer, ALS, and advanced dementia).

[3] Undercutting this reasoning is the fact that Carey previously contracted the virus and it did not leave him severely ill or deceased. [*See* Record No. 165, p. 1 (admitting his previous illness and noting that it did little more than "compound[] some of the medical" problems that he already had).]

risks associated with the virus.[4]  *Id.*  "[F]or people living in close quarters, vaccines offer relief far more effective than a judicial order."  *Id.* (quoting *Broadfield*, 5 F.4th at 803)).

Carey admits that he has received both doses of the Pfizer-BioNTech vaccine, and this is confirmed by his medical records.  [Record No. 165, p. 1; Record No. 170-2, p. 119]  Moreover, the BOP has made a booster shot available to him.  *See COVID-19 Vaccine Implementation*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited Apr. 11, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance.") (emphasis omitted).  Carey cannot reasonably claim that prison conditions, his health, and his vaccination status justify early release.  In short, his COVID-19 arguments do not present extraordinary and compelling reasons justifying a reduced sentence.

And Carey's rehabilitation arguments fare no better.  While it is commendable that he has used his time in incarceration productively, "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'"  *Hunter*, 12 F.4th at 572 (quoting 28 U.S.C. § 994(t)).  Carey has not offered any other valid reason to consider his circumstances extraordinary and compelling, and his rehabilitative progress cannot serve as the sole reason.  Because the defendant has failed to offer any extraordinary and compelling reasons for compassionate release, his motion does not present a basis for relief under § 3582(c)(1)(A)(i).

---

[4]  There is no indication that the BOP is unable to mitigate the risks that COVID-19 presents to Carey.  Contrary to his assertion that he is at "one of the most infected BOP facilities," there are currently *zero* active COVID-19 diagnoses as his place of incarceration.  [Record No. 165, p. 1]; *see COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 11, 2022).

## IV.

The factors outlined in 18 U.S.C. § 3553(a) also weigh against the relief requested. To begin, the nature and circumstances of the defendant's offenses do not support relief. *See* 18 U.S.C. § 3553(a)(1). Not only were Carey's supervised release violations serious, but a portion also constituted independent criminal offenses. Carey admitted to a total of five violations, including unlawful possession of a firearm, using, possessing, and trafficking in marijuana, and leaving the district without permission. [Record No. 151, p. 1] This is the *third* time that Carey has breached the conditions of his supervision since his initial release. [Record Nos. 125, 141, 151] Accordingly, the most recent period of incarceration imposed is necessary to meet all relevant factors of 18 U.S.C. § 3553(a)(2)(A).

Next, as the United States notes, Carey has a significant criminal history. *See* § 3553(a)(1) (calling for consideration of the history and characteristics of the defendant); [Record No. 169, p. 4–5.] Carey has over 30 prior criminal convictions—including multiple convictions for drug and weapons charges—and has spent the majority of his adult life incarcerated. [Record No. 80, p. 14–29] He has a limited employment record and a years-long history of substance abuse issues. [*Id.*, p. 33–35] These are aggravating factors in the context of his motion for early release. The undersigned remains convinced that Carey's original sentence is necessary to protect the public from future crimes he may commit. *See* § 3553(a)(2)(C).

Finally, while the defendant's rehabilitative efforts are to his benefit, they do not change the overall calculus. The § 3553(a) factors weigh against Carey's requested relief and provide an independent reason to deny his motion.

- 7 -

V.

For the reasons outlined above, it is hereby

**ORDERED** that Defendant Carey's motion for compassionate release [Record No. 165] is **DENIED**.

Dated: April 12, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky